**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

ANITA ACORD and CRYSTAL SMITH,
Individually and for Others Similarly Situated,

Plaintiffs,

v.

CARILION HEALTHCARE
CORPORATION d/b/a CARILION
CLINIC,

Defendant.

**Case No.**  7:25cv00421

Jury Trial Demanded

FLSA Collective Action
Rule 23 Class Action

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

### Summary

1.      Anita Acord (Acord) and Crystal Smith (Smith) (collectively, Plaintiffs) bring this class and collective action to recover unpaid wages and other damages from Carilion Healthcare Corporation d/b/a Carilion Clinic (Carilion).

2.      Acord worked for Carilion in Roanoke, Virginia.

3.      Smith worked for Carilion in Rocky Mount, Virginia.

4.      Plaintiffs and the other Patient Care Employees (defined below) regularly work more than 40 hours in a week.

5.      Carilion pays Plaintiffs and the other Patient Care Employees by the hour.

6.      But Carilion does not pay them for all the hours they work.

7.      Instead, Carilion automatically deducts 30 minutes a day from these employees' hours for so called "meal periods" (Carilion's "auto-deduction policy").

8.      Plaintiffs and the other Patient Care Employees are thus not paid for this time.

9.      But Plaintiffs and the other Patient Care Employees do not actually receive *bona fide* meal periods.

10.     Instead, Carilion requires Plaintiffs and the other Patient Care Employees to remain on duty and perform compensable work throughout their shifts, including during so called "meal periods," and/or subjects them to work interruptions during their "meal periods."

11.     Additionally, Carilion requires the Patient Care Employees to clock in and out for their shifts via its timekeeping system, but Carilion automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit (Carilion's "rounding policy").

12.     Finally, Carilion pays Plaintiffs and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, that it fails to include in their regular rates of pay for overtime purposes (Carilion's "bonus pay scheme").

13.     Carilion's auto-deduction policy, rounding policy, and bonus pay scheme violate the Virginia Overtime Wage Act (VOWA) and Fair Labor Standards Act (FLSA) by depriving Plaintiffs and the other Patient Care Employees of wages, including overtime wages at the required rate for all overtime hours worked.

14.     Likewise, Carilion's auto-deduction policy and rounding policy violate the Virginia Wage Payment Act (VWPA) by depriving Plaintiffs and the other Patient Care Employees of earned wages at their agreed hourly rates for all hours worked.

### JURISDICTION & VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

2

17. This Court has general personal jurisdiction over Carilion because Carilion is a Virginia corporation.

18. Venue is proper because Carilion maintains its principal place of business in Roanoke, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

19. Acord worked for Carilion as a registered nurse (RN) from approximately March 2006 until November 2023

20. Smith worked for Carilion as a housekeeper from approximately October 2022 until February 2024.

21. Throughout her employment, Carilion classified Plaintiffs as non-exempt and paid them by the hour.

22. Throughout their employment, Carilion subjected Plaintiffs to its auto-deduction policy.

23. But throughout their employment, Plaintiffs did not actually receive *bona fide* meal breaks.

24. Throughout their employment, Carilion likewise subjected them to its rounding policy and bonus pay scheme.

25. Plaintiffs bring this action on behalf of themselves and other similarly situated Carilion employees who were subject to Carilion's auto-deduction policy, rounding policy, and/or bonus pay scheme.

26. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Carilion employees who received a meal period deduction, had their punch times rounded, and/or received a bonus that was not included in their regular rate of pay at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

27.     The putative Virginia class of similarly situated employees is defined as:

> **All hourly Carilion employees in Virginia who received a meal period deduction, had their punch times rounded, and/or received a bonus that was not included in their regular rate of pay at any time during the past 3 years through final resolution of this action ("Virginia Class Members").**

28.     The FLSA Collective Members and Virginia Class Members are collectively referred to as the "Patient Care Employees."

29.     Carilion is a Virginia corporation that maintains its headquarters in Roanoke, Virginia.

30.     Carilion may be served with process by serving its registered agent: **Nicholas C. Conte, 213 S Jefferson St., Ste. 1600, Roanoke, Virginia, 24011**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

31.     At all relevant times, Carilion was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

32.     At all relevant times, Carilion was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33.     At all relevant times, Carilion was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

34.     At all relevant times, Carilion had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

35.     At all relevant times, Plaintiffs and the other Patient Care Employees were Carilion's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

4

36.     At all relevant times, Plaintiffs and the other Patient Care Employees were engaged in commerce or in the production of goods for commerce.

FACTS

37.     Carilion touts itself as a "comprehensive network of hospitals, primary and specialty physician practices and other complementary services" with more than 250 locations "[f]rom Shenandoah and the Highlands to far southwest Virginia."[1]

38.     Carilion goes on that "[o]ur employees work together to provide collaborative, compassionate care to nearly one million people throughout Virginia."[2]

39.     Carilion owns and operated eight hospitals in Western Virginia.[3]

40.     To meet its business objectives, Carilion hires workers, including Plaintiffs and the other Patient Care Employees, to work in its healthcare facilities and care for its patients.

41.     Carilion posts jobs and solicits applications across all its facilities through its website.[4]

42.     Carilion maintains control, oversight, and direction of Plaintiffs and the Patient Care Employees, including, but not limited to, hiring, firing, disciplining, and other employment practices, regardless of the specific Carilion facility they are assigned.

43.     Indeed, Carilion provides centralized HR, benefits, and payroll services for its almost 11,000 employees.[5]

---

[1] https://www.carilionclinic.org/ *and* https://www.carilionclinic.org/news/about (last visited June 11, 2025).
[2] https://jobs.carilionclinic.org/content/Locations/?locale=en_US (last visited June 12, 2025).
[3] https://www.carilionclinic.org/locations?q=Hospitals (last visited June 25, 2025).
[4] https://jobs.carilionclinic.org/; https://jobs.carilionclinic.org/go/NursingNew-Graduate-RNs/3584300/ (last visited June 12, 2025).
[5] https://www.insidecarilion.org/public/new-hire-hub-home; https://idp.carilion.com/cas/login; *and* https://www.insidecarilion.org/public/employee-hub (last visited June 12, 2025).

44.    Carilion requires Plaintiffs and the other Patient Care Employees to follow its uniform policies and procedures regardless of facility.[6]

45.    Carilion supervises and controls Plaintiffs' and the other Patient Care Employees' patient care work and prohibits these employees from straying from its uniform procedures, plans, protocols, and specifications.

46.    Carilion controls Plaintiffs' and the other Patient Care Employees' rates and methods of pay, their schedules and assignments, as well as their patient care work.

47.    Plaintiffs' and the other Patient Care Employees' work must strictly adhere to the uniform quality standards put in place by Carilion.[7]

48.    Without the patient care work Plaintiffs and the Patient Care Employees perform, Carilion would not be able to complete its business objective of operating hospitals and medical facilities.

49.    Thus, Plaintiffs' and the Patient Care Employees' work is integral to Carilion's business objectives.

50.    In sum, Carilion employs Plaintiffs and the other Patient Care Employees at its hospitals and other facilities, subject to the same or similar policies, procedures, and expectations.

51.    Carilion uniformly classifies these employees, including Plaintiffs and the Patient Care Employees, as non-exempt and pays them by the hour.

52.    While exact job titles and locations may differ, Carilion subjects them to the same or similar practices for similar work.

---

[6]https://idp.carilion.com/cas/login?service=https%3A//www.insidecarilion.org/casservice%3Fdestination%3D/employee-guide.

[7] *See e.g.*, https://www.carilionclinic.org/pto-plan and https://www.carilionclinic.org/sites/default/files/202311/Code%20of%20Excellence%20Manual_3.pdf (last visited June 12, 2025).

53.     For example, Acord worked for Carilion as an RN at its Carilion Roanoke Memorial Hospital from approximately March 2006 until November 2023.

54.     As an RN, Acord's job duties included attending to patients by prepping examination rooms, monitoring vital signs, administering prescribed medications, administering IV fluids, numerous other treatments, and filling out and updating patient charts.

55.     Smith worked as a housekeeper in Carilion's Franklin Memorial Hospital from approximately October 2022 until February 2024.

56.     As a housekeeper, Smith's job duties included cleaning and sanitizing hospital rooms and other facilities.

57.     Throughout their employment, Carilion paid them by the hour.

58.     Acord typically worked approximately 12 hours a day "on the clock" for 3 to 4 days a week (36 to 48 hours a workweek).

59.     Smith typically worked 8 to 10 hours a day for 5 days a week (40 to 50 hours a workweek).

60.     Throughout their employment, Carilion subjected Plaintiffs to its auto-deduction policy, deducting 30 minutes each workday for so called "meal periods."

61.     But throughout their employment, Plaintiffs did not actually receive *bona fide* meal breaks.

62.     Carilion requires Plaintiffs and the other Patient Care Employees to follow and abide by common work, time, pay, "meal period," and overtime policies and procedures in the performance of their jobs.

63.     At the end of each pay period, Plaintiffs and the other Patient Care Employees receive wages from Carilion that are determined by common systems and methods that Carilion selects and controls.

64.     Carilion requires Plaintiffs and the Patient Care Employees to record their "on the clock" hours worked using Carilion's designated timekeeping system.

65.     Like Plaintiffs, the other Patient Care Employees typically work approximately 8 to 12 hours a day for 3 to 5 days a week (36-60 hours a workweek).

66.     Carilion subjects Plaintiffs and the other Patient Care Employees to its common auto-deduction policy.

67.     Specifically, Carilion automatically deducts 30 minutes a workday from Plaintiffs' and the other Patient Care Employees' hours and wages for so called "meal periods."

68.     Carilion automatically deducts this time regardless of whether Plaintiffs and the other Patient Care Employees actually receive full, uninterrupted, 30-minute meal periods.

69.     Carilion simply assumes they receive and are able to take *bona fide* meal periods each shift they work.

70.     But Plaintiffs and the other Patient Care Employees do not actually receive *bona fide* meal periods.

71.     Instead, Carilion requires Plaintiffs and the Patient Care Employees to remain on duty and perform compensable work throughout their shifts for Carilion's predominant benefit, including during their "meal periods."

72.     And Carilion subjects Plaintiffs and the Patient Care Employees to work interruptions during their unpaid "meal periods."

73.     Thus, Plaintiffs and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal periods."

74.     Rather, during their unpaid "meal periods," Plaintiffs and the Patient Care Employees are forced to substantially perform their regular job duties and responsibilities.

75. Thus, Plaintiffs and the Patient Care Employees routinely spend their unpaid "meal periods" performing work for Carilion's—not these employees'—predominant benefit.

76. This unpaid time is compensable under the FLSA and Virginia law because Carilion knew, or should have known, that (1) Plaintiffs and the Patient Care Employees were performing unpaid work during their "meal periods," (2) they were interrupted with work duties during attempted "meal periods," (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped "meal periods" due to work demands, (5) the "meal period" was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained on Carilion's premises or under Carilion's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular patient care duties for Carilion's predominant benefit.

77. Carilion fails to exercise its duty as Plaintiffs' and the Patient Care Employees' employer to ensure these employees are not performing work that Carilion does not want performed during their unpaid "meal periods."

78. And Carilion knows Plaintiffs and the other Patient Care Employees routinely perform work "off the clock" during their unpaid "meal periods" because Carilion expects and requires them to do so.

79. Plaintiffs and the other Patient Care Employees have complained to Carilion's management and their supervisors about being forced to work during their unpaid "meal periods."

80. Thus, Carilion required, requested, suffered, or permitted Plaintiffs and the Patient Care Employees to work during their unpaid "meal periods."

81. Despite accepting the benefits, Carilion does not pay Plaintiffs and the Patient Care Employees for the compensable work they perform during their automatically deducted "meal periods."

82.     Thus, under Carilion's uniform auto-deduction policy, Plaintiffs and the Patient Care Employees are denied wages for all hours worked at their agreed rates, and overtime wages during workweeks in which they work more than 40 hours.

83.     In addition to deducting from these employees' wages for so called "meal periods," Carilion also uniformly subjects Plaintiffs and the Patient Care Employees to its rounding policy.

84.     Specifically, Carilion automatically rounds Plaintiffs' and the other Patient Care Employees' recorded clock in and clock out punches to the nearest quarter hour for Carilion's—not the employees'—primary benefit.

85.     In conjunction with Carilion's rounding policy, it also prohibits Plaintiffs and the other Patient Care Employees from clocking in and out for their shifts more than 7.5 minutes before their shift start times and more than 7.5 minutes after their shift end times.

86.     And Carilion considers Plaintiffs and the other Patient Care Employees tardy and takes disciplinary action or threatens to do so if they clock in past their scheduled start time or clock out before their scheduled end time.

87.     Likewise, Carilion takes disciplinary action or threatens to do so if they clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

88.     Carilion further requires and expects Plaintiffs and the other Patient Care Employees to perform their normal job duties immediately upon clocking in, such as attending meetings, sanitizing, reviewing patient records, and/or communicating with and caring for patients.

89.     By enforcing these policies together, Carilion ensures its rounding policy benefits Carilion to the detriment of Plaintiffs and the other Patient Care Employees.

90.     Thus, under Carilion's rounding policy, Plaintiffs and the other Patient Care Employees are denied wages for all hours worked, and overtime wages for all overtime hours worked during workweeks in which they work more than 40 hours, in violation of the FLSA and Virginia law.

91.     When Plaintiffs and the Patient Care Employees work more than 40 hours in a workweek, Carilion does not pay them overtime wages for all overtime hours worked because Carilion fails to include time these employees worked "off the clock" due to its rounding policy (and unpaid "meal periods").

92.     Finally, throughout their employment, Carilion has not paid Plaintiffs and the other Patient Care Employees at the required premium rates for all hours worked in excess of 40 in a workweek.

93.     Instead, Carilion pays Plaintiffs and the other Patient Care Employees under its bonus pay scheme.

94.     Specifically, Carilion pays Plaintiffs and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

95.     Thus, under Carilion's bonus pay scheme, it does not pay Plaintiffs and the other Patient Care Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 in a workweek.

96.     The Patient Employees are thus uniformly subject to the same or similar unlawful policies—Carilion's auto-deduction policy, rounding policy, and bonus pay scheme—for similar work, in willful violation of the FLSA, VOWA, and VWPA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiffs bring their claims as a class and collective action on behalf of themselves and the other Patient Care Employees.

98.     The Patient Care Employees were victimized by Carilion's auto-deduction policy, rounding policy, and bonus pay scheme.

99.     Other Patient Care Employees worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to Carilion's same or similar auto-deduction policy, rounding policy, and bonus pay scheme.

100.     Based on their experience with Carilion, Plaintiffs are aware Carilion's auto deduction policy, rounding policy, and bonus pay scheme were imposed on other Patient Care Employees.

101.     The Patient Care Employees are similarly situated in the most relevant respects.

102.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

103.     Therefore, the specific job titles or precise job locations of the various Patient Care Employees do not prevent class or collective treatment.

104.     Rather, the putative class and collective are held together by Carilion's auto-deduction policy, rounding policy, and bonus pay scheme, which systematically deprived Plaintiffs and the Patient Care Employees of earned wages at their agreed rates and overtime wages for hours worked in excess of 40 in a workweek.

105.     Carilion's failure to pay wages as required by the VWPA and overtime wages as required by the FLSA and VOWA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Patient Care Employees.

106.     Carilion's records reflect the number of hours the Patient Care Employees recorded working "on the clock" each week.

107.     Carilion's records also show that it automatically deducted 30 minutes a day from the Patient Care Employees' recorded work time for purported "meal periods."

108.    Likewise, Carilion's records show the specific time the Patient Care Employees punched in and out for the shifts.

109.    And Carilion's records show that it rounded the Patient Care Employees recorded time punches to the nearest quarter hour.

110.    Finally, Carilion's records show it paid the Patient Care Employees non-discretionary bonuses.

111.    The back wages owed to Plaintiffs and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

112.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Carilion's records, and there is no detraction from the common nucleus of liability facts.

113.    Therefore, the issue of damages does not preclude class or collective treatment.

114.    Plaintiffs' experiences are therefore typical of the experiences of the other Patient Care Employees.

115.    Plaintiffs have no interest contrary to, or in conflict with, the Patient Care Employees.

116.    Like each Patient Care Employee, Plaintiffs have an interest in obtaining the unpaid wages owed under federal and Virginia law.

117.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this action.

118.    Absent this class and collective action, many Patient Care Employees likely will not obtain redress for their injuries, and Carilion will reap the unjust benefits of violating the FLSA and Virginia law.

119.    Further, even if some of the Patient Care Employees could afford individual litigation against Carilion, it would be unduly burdensome to the judicial system.

13

120.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

121.    The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

122.    Among the common questions of law and fact are:

a.    Whether Carilion engaged in a policy and practice of automatic 30-minute deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted;

b.    Whether Carilion's auto-deduction policy deprived the Patient Care Employees of wages, including overtime wages, for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted;

c.    Whether Carilion knew, or had reason to know, the Patient Care Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal periods";

d.    Whether Carilion's rounding policy deprived the Patient Care Employees of wages for time worked;

e.    Whether Carilion failed to pay the Patient Care Employees overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock";

f.    Whether Carilion paid the Patient Care Employees non-discretionary bonuses;

g.    Whether Carilion engaged in a policy or practice of failing to include non-discretionary bonuses in the Patient Care Employees' regular rates of pay for overtime purposes;

14

> h.   Whether Carilion failed to pay the Patient Care Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;
>
> i.   Whether Carilion's decision not to pay the Patient Care Employees wages for all hours worked and overtime wages for all overtime hours worked was made in good faith; and
>
> j.   Whether Carilion's violations were willful.

123.   As part of its regular business practices, Carilion intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the Patient Care Employees.

124.   There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

125.   This notice should be sent to the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

126.   Those similarly situated employees are known to Carilion, are readily identifiable, and can be located through Carilion's business and personnel records.

### CARILION'S VIOLATIONS WERE WILLFUL

127.   Carilion knew it was subject to the FLSA's and VOWA's overtime provisions.

128.   Carilion knew the FLSA and VOWA required it to pay employees, including the Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

129.   Carilion knew the Patient Care Employees were non-exempt employees entitled to overtime pay.

130.    Carilion knew the Patient Care Employees were paid by the hour.

131.    Carilion knew each Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Carilion required these employees to record their "on the clock" hours using its timekeeping system.

132.    Carilion knew the FLSA, VOWA, and/or VWPA required it to pay employees, including the Patient Care Employees, for all hours these employees performed compensable work.

133.    Carilion knew that, as the Patient Care Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Carilion did not want performed.

134.    Carilion knew it failed to provide the Patient Care Employees with *bona fide*, uninterrupted meal periods.

135.    Carilion knew the Patient Care Employees did not actually receive *bona fide*, uninterrupted meal periods.

136.    Carilion knew the Patient Care Employees regularly worked during their unpaid "meal periods."

137.    Carilion knew it required, requested, suffered, or permitted the Patient Care Employees to work during their unpaid "meal periods."

138.    Carilion knew the Patient Care Employees regularly spent their unpaid "meal periods" substantially performing their regular job duties for Carilion's predominant benefit.

139.    Indeed, Patient Care Employees complained to Carilion's management, HR, and/or their supervisors about being forced to work during their unpaid "meal periods."

140.    Thus, Carilion knew, should have known, or recklessly disregarded the fact that the Patient Care Employees performed compensable work during their unpaid meal breaks.

16

141.     Nonetheless, Carilion automatically deducted 30 minutes a day from the Patient Care Employees' recorded time for "meal periods."

142.     In other words, Carilion knew, should have known, or recklessly disregarded the fact that it did not pay the Patient Care Employees for all the hours they performed compensable work performed for Carilion's predominant benefit.

143.     Carilion knew it rounded the Patient Care Employees clock in and clock out punches to the nearest quarter hour.

144.     Carilion knew it required the Patient Care Employees to clock in and out within 7.5 minutes of their scheduled shift start and end times, under threat of disciplinary action for tardiness.

145.     Carilion knew this ensured the Patient Care Employees' hours would be rounded to the nearest quarter hour for Carilion's primary benefit and to the detriment of the Patient Care Employees.

146.     Carilion knew it paid Plaintiffs and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses.

147.     Carilion knew these non-discretionary bonuses were not included in Plaintiffs' and the other Patient Care Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

148.     And Carilion knew the FLSA and VOWA required it to pay Plaintiffs and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

149.     Carilion knew the VWPA requires employers, like Carilion, to pay employees, including Plaintiffs and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular paydays.

150. Carilion's decision to automatically deduct 30 minutes a day from the Patient Care Employees' recorded time for "meal periods" was neither reasonable, nor was this decision made in good faith.

151. Carilion's decision to round the Patient Care Employees' recorded work time to the nearest quarter hour for its benefit and their detriment under its rounding policy was neither reasonable, nor was this decision made in good faith.

152. Carilion's decision to exclude non-discretionary bonuses from the Patient Care Employees' regular rates of pay was neither reasonable, nor was this decision made in good faith.

153. Carilion's failure to pay the Patient Care Employees overtime wages for all overtime hours worked at the required rate—based on all remuneration—was neither reasonable, nor was it made in good faith.

154. Carilion knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Plaintiffs and the Patient Care Employees of overtime wages at the required rates for all hours worked after 40 in a workweek and earned wages in violation of the FLSA and Virginia law.

155. Carilion knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and Virginia law.

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
(COLLECTIVE ACTION)**

156. Plaintiffs bring their FLSA claim on behalf of themselves and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

157. Carilion violated, and is violating, the FLSA by employing non-exempt employees (Plaintiffs and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40

hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock."

158.    Carilion's unlawful conduct harmed Plaintiffs and the FLSA Collective Members by depriving them of the overtime wages they are owed.

159.    Accordingly, Plaintiffs and the FLSA Collective Members are entitled to recover the difference between the wages actually paid and the overtime wages actually earned under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

<u>COUNT II</u>

FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA
(VIRGINIA CLASS)

160.    Plaintiffs bring their VOWA overtime claim on behalf of themselves and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

161.    Carilion's conduct violates the VOWA. *See* VA. CODE § 40.1-29.2.

162.    At all relevant times, Carilion was subject to the VOWA because Carilion was (and is) an "employer" within the meaning of the VOWA.

163.    At all relevant times, Carilion employed Plaintiffs and the other Virginia Class Members as its covered "employees" within the meaning of the VOWA.

164.    Plaintiffs and the other Virginia Class Members are non-exempt employees entitled to overtime wages under the VOWA.

165.    The VOWA requires employers, like Carilion, to pay non-exempt employees, including Plaintiffs and the other Virginia Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. VA. CODE § 40.1-29.2.

166.    Carilion violated, and is violating, the VOWA by failing to pay Plaintiffs and the other Virginia Class Members overtime wages of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

167.    Carilion's unlawful conduct harmed Plaintiffs and the other Virginia Class Members by depriving them of the overtime wages they are owed.

168.    Accordingly, Carilion owes Plaintiffs and the other Virginia Class Members the overtime wages at 1.5 times their regular rates for all hours worked over 40 in a workweek, plus an additional amount as liquidated damages. VA. CODE §§ 40.1-29(J) and 40.1-29.2.

169.    Finally, Plaintiffs and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

## COUNT III

### FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA
### (VIRGINIA CLASS)

170.    Plaintiffs bring their VWPA claim on behalf of themselves and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

171.    Carilion's conduct violates the VWPA (VA. CODE § 40.1-29).

172.    At all relevant times, Carilion was subject to the VWPA because Carilion was (and is) an "employer" within the meaning of the VWPA.

173.    At all relevant times, Carilion employed Plaintiffs and the other Virginia Class Members as its covered "employees" within the meaning of the VWPA.

174.    The VWPA requires employers, like Carilion, to pay employees, including Plaintiffs and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular, established paydays. VA. CODE § 40.1-29.

175.    During the course of their employment, Carilion agreed to pay Plaintiffs and each Virginia Class Member an hourly rate for all the hours of work they performed.

176.    Plaintiffs and each Virginia Class Member accepted Carilion's offer.

177.    But during the course of their employment, Carilion failed to pay Plaintiffs and the other Virginia Class Members for all the time they worked at the rates Carilion agreed to pay them because Carilion failed to include the time they worked "off the clock" before and after their shifts due to Carilion's rounding policy and during their "meal periods."

178.    Thus, Carilion violated, and is violating, the VWPA by failing to pay Plaintiffs and the other Virginia Class Members all their earned wages (at the rates Carilion agreed to pay them) for all the hours of work they performed for Carilion's predominant benefit.

179.    Carilion's unlawful conduct harmed Plaintiffs and the other Virginia Class Members by depriving them of the earned wages they are owed.

180.    Accordingly, Carilion owes Plaintiffs and the other Virginia Class Members their unpaid earned wages (at their agreed hourly rates), plus an equal amount as liquidated damages. VA. CODE § 40.1-29(J).

181.    Finally, Plaintiffs and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

## JURY DEMAND

182.    Plaintiffs demand a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the Patient Care Employees, seek the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Patient Care Employees with instructions to permit them to assert timely

FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Plaintiffs and their counsel to represent the interests of the Patient Care Employees;

d.      An Order finding Carilion liable to Plaintiffs and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding Carilion liable to Plaintiffs and the other Virginia Class Members for all their unpaid overtime wages owed under the VOWA, plus liquidated damages;

f.      An Order finding Carilion liable to Plaintiffs and the other Virginia Class Members for all their unpaid earned wages owed under the VWPA, plus liquidated damages;

g.      Judgment awarding Plaintiffs and the other Patient Care Employees all unpaid earned wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, VOWA, and VWPA;

h.      An Order awarding attorney's fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: June 27, 2025

Respectfully submitted,
**BUTLER CURWOOD, PLC**

By: */s/ Zev H. Antell*

Harris D. Butler, III (VSB No. 26483)
Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
140 Virginia Street, Suite 302
Richmond, VA 23219
Phone: (804) 648-4848
Fax:     (804) 237-0413
harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com
*Pro hac vice applications forthcoming*

23

**ATTORNEYS FOR PLAINTIFFS &**
**THE PATIENT CARE EMPLOYEES**